UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MEI DI CHEN, NENG WU CHEN, QI CHUN CHEN,
SHOU MING ZHENG, and XING JIANG,

                                   Plaintiffs,

-against-

DIM SUM PALACE INC., DIM SUM PALACE YAN
INC., SAM YAN A/K/A YI SHEN ZHEN, and
KEVIN YAN A/K/A YI HAI ZHEN,

                                   Defendants.
------------------------------------------------------------------X

Case No: 1:23-cv-01707

**COMPLAINT**

Plaintiffs, by their attorneys, state and allege as follows:

## PRELIMINARY STATEMENT

1.       Plaintiffs Mei Di Chen, Neng Wu Chen, Qi Chun Chen, Shou Ming Zheng, and Xing Jiang (collectively "Plaintiffs") bring this action against their former employers Dim Sum Palace Inc., Dim Sum Palace Yan Inc., Sam Yan a/k/a Yi Shen Zhen, and Kevin Yan a/k/a Yi Hai Zhen (collectively "Defendants") for serious violations of federal and New York state labor laws, including by willfully failing to pay minimum wage, overtime pay, and spread-of-hours compensation.

2.       Between approximately September 2016 until May 2020, for varying periods of time, Plaintiffs worked at two affiliated restaurants operated by Defendants and doing business as "Dim Sum Palace" in midtown Manhattan (the "Dim Sum Palace restaurants").

3.       Throughout Plaintiffs' employment at the Dim Sum Palace restaurants, Defendants paid Plaintiffs salaries that were the equivalent of an hourly rate of between approximately $3.20 and $6.52, far below the required minimum wage under the Fair Labor Standards Act ("FLSA")

and New York Labor Law ("NYLL").  In addition, Defendants failed to pay any overtime premiums or spread-of-hours compensation despite requiring Plaintiffs to work twelve hours per day for five or six days per week.  Defendants also required Plaintiffs to purchase and maintain expensive equipment necessary to perform their delivery work without reimbursement, which had the effect of further reducing their wages below the required minimum wage, in violation of the FLSA and NYLL.  Defendants' failure to pay Plaintiffs on a weekly basis, despite Plaintiffs' status as manual workers, was a further violation of NYLL.

4.      Finally, Defendants violated NYLL (i) by failing to provide Plaintiffs at the time of hire with a written notice including certain required information about their employment and (ii) by either failing to provide pay statements including all the legally mandated information or providing inaccurate legally mandated information on provided pay statements.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203, and 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because the events giving rise to the claims occurred in this District.

## THE PARTIES

### Plaintiffs

8.      Plaintiffs Mei Di Chen, Neng Wu Chen, Qi Chun Chen, Shou Ming Zheng and Xing Jiang were all employed by Defendants as delivery workers for either the Dim Sum Palace restaurant located at 47 W. 55th Street, New York, New York (the "55th Street Location") or the

Dim Sum Palace restaurant located at 334 W. 46th Street, New York, New York (the "46th Street Location").

9.      Plaintiff Mei Di Chen worked for the Defendants from approximately September 2016 to approximately January 2019.   Mei Di Chen worked at the 55th Street Location from approximately September 2016 to approximately January 2018.   Thereafter and through the end of his employment, Mei Di Chen worked simultaneously at both the 55th Street Location and the 46th Street Location.

10.      Plaintiff Neng Wu Chen worked for the Defendants from approximately October 2017 to approximately March 15, 2020.   Neng Wu Chen worked at the 46th Street Location from approximately October 2017 to approximately the end of February 2018.   From approximately the beginning of March 2018 to approximately January 2019, Neng Wu Chen worked at both the 46th Street Location and the 55th Street Location.   From approximately January 2019 through the end of his employment, Neng Wu Chen worked at the 55th Street Location.

11.      Plaintiff Qi Chun Chen worked for the Defendants from approximately February 2019 to May 2020.   Qi Chun Chen worked at the 46th Street Location from approximately February 2019 to approximately March 15, 2020.   Thereafter through the end of his employment, Qi Chun Chen worked at the 55th Street Location.

12.      Plaintiff Shou Ming Zheng worked for the Defendants from approximately August 2016 to January 2018.   Shou Ming Zheng worked at the 46th Street Location from approximately August 2016 to approximately May 2017.   Thereafter through the end of his employment Shou Ming Zheng worked simultaneously at both the 46th Street Location and the 55th Street Location.

13.      Plaintiff Xing Jiang worked for the Defendants from approximately February 2019 to approximately March 30, 2020.  Xing Jiang worked at the 46th Street Location from approximately

February 2019 to approximately March 15, 2020.  From approximately March 16, 2020 to March 30, 2020, Xing Jiang worked at the 55th Street Location.

14.     As delivery workers, Plaintiffs spent more than 25% of their working time performing physical labor and were "manual workers" within the meaning of NYLL § 190.

15.     Plaintiffs' primary language is Fujianese.

**Defendants**

Dim Sum Palace Inc.

16.     Defendant Dim Sum Palace Inc. is a corporation organized under the laws of the State of New York with a principal office located at 334 W. 46th Street, New York, NY 10036.

17.     At all times Plaintiffs worked at the 46th Street Location, it was owned and operated by Dim Sum Palace Inc.

18.     At all times Plaintiffs worked for Dim Sum Palace Inc., the business was engaged in the sale of food for consumption within its premises and was a "restaurant" within the meaning of N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.1.

19.     At all times Plaintiffs worked for Dim Sum Palace Inc., it had eleven or more employees and was a "large employer" within the meaning of NYLL § 652.

20.     The 46th Street Location is currently part of a chain of seven restaurants doing business under the name "Dim Sum Palace" throughout New York City.

21.     Upon information and belief, throughout the period Plaintiffs worked for Dim Sum Palace Inc., Dim Sum Palace Inc. was an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203, in that it:

> a. had employees engaged in commerce or in the production of goods for commerce, or who handled, sold, or otherwise worked on goods or materials that were moved in or produced for commerce by any person, including but not limited to spices and

4

other supplies that come from foreign countries, including but not limited to China; and

    b.   had an annual gross volume of sales of not less than $500,000.

22.       At all times Plaintiffs worked at the 46th Street Location, Dim Sum Palace Inc. had control over Plaintiffs, including the ability to (1) hire and fire Plaintiffs; (2) supervise and control Plaintiffs' delivery shifts and conditions of employment by setting twelve-hour shifts; (3) determine Plaintiffs' rate and method of payment, which was by check or cash, paid twice a month; and (4) maintain employment records for Plaintiffs.  In possessing such control, Dim Sum Palace Inc. was Plaintiffs' "employer" within the meaning of the FLSA, 29 U.S.C. § 203, and NYLL § 190.

23.       Control over Plaintiffs was exercised on behalf of Dim Sum Palace Inc. by Sam Yan and Kevin Yan as described further below.

Dim Sum Palace Yan Inc.

24.       Defendant Dim Sum Palace Yan Inc. is a corporation organized under the laws of the State of New York with a principal office located at 47 W. 55th Street, New York, NY 10019.

25.       At all times Plaintiffs worked at the 55th Street Location, it was owned and operated by Dim Sum Palace Yan Inc.

26.       The 55th Street Location is now closed, and the restaurant was moved to 28 W. 56th Street, New York, NY 10019, where it is still owned and operated by Dim Sum Palace Yan Inc.

27.       At all times Plaintiffs worked for Dim Sum Palace Yan Inc., the business was engaged in the sale of food for consumption within its premises and was a "restaurant" within the meaning of N.Y. Comp. Codes R. & Regs. tit. 12 §146-3.1.

28.       At all times Plaintiffs worked for Dim Sum Palace Yan Inc., it had eleven or more employees and was a "large employer" within the meaning of NYLL § 652.

29.     The 55th Street Location (now located at 28 W. 56th Street, New York, NY 10019) is part of a chain of seven restaurants doing business under the name "Dim Sum Palace" throughout New York City.

30.     Upon information and belief, throughout the period Plaintiffs worked for Dim Sum Palace Yan Inc., Dim Sum Palace Yan Inc. was an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203, in that it:

    a.  had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce by any person, including but not limited to spices and other supplies that come from foreign countries, including but not limited to China; and

    b.  had an annual gross volume of sales of not less than $500,000.

31.     At all times Plaintiffs worked at the 55th Street Location, Dim Sum Palace Yan Inc. had control over Plaintiffs, including the ability to (1) hire and fire Plaintiffs; (2) supervise and control Plaintiffs' delivery shifts and conditions of employment by setting twelve-hour shifts; (3) determine Plaintiffs' rate and method of payment, which was by check or cash, paid twice a month; and (4) maintain employment records for Plaintiffs.  In possessing such control, Dim Sum Palace Yan Inc. was Plaintiffs' "employer" within the meaning of the FLSA, 29 U.S.C. § 203, and NYLL § 190.

32.     Control over Plaintiffs was exercised on behalf of Dim Sum Palace Yan Inc. by Sam Yan and Kevin Yan as described further below.

Sam Yan a/k/a Yi Shen Zhen and Kevin Yan a/k/a Yi Hai Zhen

33.     Upon information and belief, Defendants Sam Yan and Kevin Yan were both shareholders of Dim Sum Palace Inc. and Dim Sum Palace Yan Inc. throughout the period of Plaintiffs' employment at the Dim Sum Palace restaurants.

34.     Upon information and belief, Sam Yan was the President of Dim Sum Palace, Inc. throughout the period of Plaintiffs' employment at the Dim Sum Palace restaurants.

35.     Upon information and belief, Sam Yan is the owner and/or President of at least six of the seven Dim Sum Palace locations constituting the restaurant chain "Dim Sum Palace".

36.     Upon information and belief, Sam Yan and Kevin Yan are brothers.

37.     Upon information and belief, both Sam Yan and Kevin Yan were regularly present and performed managerial functions at the 46th Street Location and/or 55th Street Location multiple days per week throughout Plaintiffs' period of employment at the Dim Sum Palace restaurants.

38.     Upon information and belief, Sam Yan and Kevin Yan each had the authority to hire and fire Plaintiffs, supervise and set Plaintiffs' schedules, determine the rate and method of payment for Plaintiffs, maintain Plaintiffs' employment records, and assign work responsibilities to Plaintiffs.

39.     Sam Yan hired employees of the 46th Street Location and 55th Street Location, including but not limited to Plaintiffs Neng Wu Chen, Mei Di Chen, and Shou Ming Zheng.

40.     Sam Yan fired employees of the 46th Street Location and 55th Street Location, including but not limited to Neng Wu Chen, Qi Chun Chen, and Xing Jiang.

41.     Kevin Yan supervised the workers, including Plaintiffs, such as by relaying concerns in response to customer complaints or instructing that the restaurant be cleaned.

42.     Throughout the Plaintiffs' employment, Sam Yan was the person who normally paid Plaintiffs their wages on behalf of both Dim Sum Palace Inc. and Dim Sum Palace Yan Inc., either in the form of a semi-monthly check or an envelope of cash.

43.     Every Lunar New Year, on behalf of the 46th Street Location and 55th Street Location, Sam Yan and Kevin Yan gave Plaintiffs two red envelopes containing cash bonuses.

44.     Sam Yan maintained records of wages paid to Plaintiffs throughout some or all of Plaintiffs' employment.

45.     By having the authority to hire and fire Plaintiffs, supervise and manage Plaintiffs, set Plaintiffs' terms of employment, determine Plaintiffs' rates and methods of payment, and maintain Plaintiffs' employment records, Sam Yan and Kevin Yan were Plaintiffs' "employers" within the meaning of the FLSA, 29 U.S.C. § 203, and NYLL § 190.

Joint Employers

46.     Under the FLSA and NYLL, an individual may simultaneously have multiple employers acting as "joint employers" responsible both individually and jointly for compliance with all the applicable provisions of the FLSA and NYLL.

47.     As described above, Sam Yan and Kevin Yan jointly operated and controlled the Dim Sum Palace restaurants at which Plaintiffs worked by owning these entities and holding managerial positions at both restaurants.

48.     Dim Sum Palace Inc. and Dim Sum Palace Yan Inc. successively and/or simultaneously employed Plaintiffs who, in some instances, were paid by both entities.

49.     Plaintiffs were also often assigned to whichever location suited the needs of a particular Dim Sum Palace restaurant.

50.     During the relevant time period, all Defendants simultaneously exercised the requisite control over Plaintiffs during the relevant time period to be considered Plaintiffs' employers.

51.     Therefore, Defendants were all joint employers under the meaning of the FLSA and NYLL.

## FACTS

### Working Conditions

52.     Plaintiffs' primary responsibility throughout their employment by Defendants was to deliver prepared food to the restaurants' customers.

53.     Plaintiffs were paid twice per month rather than on a weekly basis.

54.     Defendants never established hourly rates of pay for any Plaintiff or informed them that any hourly rates of pay existed.

55.     Defendants never paid any Plaintiff "spread-of-hours" compensation—meaning an additional hour of wages at the applicable minimum wage for a workday spanning longer than ten hours.

56.     Defendants never paid any Plaintiff overtime premiums.

57.     Defendants never notified any Plaintiff, either in writing or orally, of the applicable minimum wage or their intention to claim a "tip credit" under either the FLSA or NYLL, which permits an employer to pay a tipped worker a wage that is lower than the applicable statutory minimum wage, provided that (i) the wages and the employee's tips, taken together, are at least equivalent to the minimum wage and (ii) the employer has taken affirmative steps to inform the affected employee of the employer's intent to claim the tip credit.  Defendants also failed to establish, maintain, and preserve for at least six years weekly payroll records showing the tip credits claimed as part of the minimum wage as required under NYLL.

58.     In addition, Plaintiffs did not receive any breaks.  They were typically provided no more than fifteen minutes to eat their lunch and were not permitted to leave the restaurant premises

during that period.  Moreover, they remained on duty during that period such that if a customer

order needed to be delivered, they had to be available to make the delivery.

<u>Hours Worked and Wages Paid</u>

59.     Throughout their employment, Plaintiffs each normally worked schedules that were

comprised of daily shifts of approximately twelve hours.  The daily shifts were typically either

from 10:30 AM to 10:30 PM, 11:00 AM to 11:00 PM, or 11:30 AM to 11:30 PM.  Plaintiffs rotated

between these three shifts at the discretion of Defendants.

60.     Throughout their employment with Defendants, each Plaintiff worked the following

hours and received the following compensation:

*Mei Di Chen*

61.     Throughout his employment with Defendants, Plaintiff Mei Di Chen normally worked

six days per week and approximately twelve hours per day, for a total of approximately 72 hours

per week.

62.     Mei Di Chen was paid in cash during some periods of his employment and by check

during other periods.

63.     Throughout his employment, Mei Di Chen was paid as laid out in the below table:

| Time Period | Paid By | Monthly Wage | Hours per Week | Hourly Wage |
|---|---|---|---|---|
| 09/2016 – 03/2017 | Cash | $1,000 | 72 | $3.20 |
| 03/2017 – 11/2017 | Check & Cash | $1,200 | 72 | $3.84 |
| 12/2017 | Check | $1,900 | 72 | $6.07 |
| 01/2018 – 01/2019 | Check | $2,000 | 72 | $6.39 |

64.     At all times, Mei Di Chen was paid below the applicable minimum wage of $7.25 per

hour under the FLSA and the applicable minimum wages of $9.00 per hour for work performed in

2016, $11.00 per hour for work performed in 2017, $13.00 per hour for work performed in 2018,

and $15.00 per hour for work performed in 2019 under NYLL.

*Neng Wu Chen*

65.     From the beginning of his employment with Defendants in October 2017 until approximately September 2019, Plaintiff Neng Wu Chen normally worked six days per week and approximately twelve hours per day, for a total of approximately 72 hours per week.

66.     From approximately September 2019 through the end of his employment in March 2020, Neng Wu Chen normally worked five days per week and approximately twelve hours per day, for a total of approximately 60 hours per week.

67.     Throughout his employment, Neng Wu Chen was paid as laid out in the below table:

| Time Period | Paid By | Monthly Wage | Hours per Week | Hourly Wage |
|---|---|---|---|---|
| 10/2017 – 02/2018 | Check | $1,900 | 72 | $6.07 |
| 02/2018 – 09/2019 | Check | $2,000 | 72 | $6.39 |
| 09/2019 – 03/2020 | Check | $1,700 | 60 | $6.52 |

68.     At all times, Neng Wu Chen was paid below the applicable minimum wage of $7.25 per hour under the FLSA and the applicable minimum wages of $11.00 per hour for work performed in 2017, $13.00 per hour for work performed in 2018, and $15.00 per hour for work performed in 2019 and 2020 under NYLL.

*Qi Chun Chen*

69.     Throughout his employment with Defendants, Plaintiff Qi Chun Chen normally worked five days per week, twelve hours per day, for a total of approximately 60 hours per week.

70.     Throughout his employment, Qi Chun Chen was paid as laid out in the below table:

| Time Period | Paid By | Monthly Wage | Hours per Week | Hourly Wage |
|---|---|---|---|---|
| 02/2019 – 04/2020 | Check | $1,700 | 60 | $6.52 |
| 05/2020 | Cash | $1,500 | 60 | $5.75 |

71.     At all times, Qi Chun Chen was paid below the applicable minimum wage of $7.25 per hour under the FLSA and the applicable minimum wages of $15.00 per hour for work performed in 2019 and 2020 under NYLL.

*Shou Ming Zheng*

72.      For the first two months of his employment with Defendants starting in August 2016, Plaintiff Shou Ming Zheng worked five days per week, twelve hours per day, for a total of approximately 60 hours per week.

73.      For the remainder of his employment until the end of his employment in January 2018, Shou Ming Zheng worked six days per week each week, twelve hours per day, for a total of approximately 72 hours per week.

74.      Throughout his employment, Shou Ming Zheng was paid as laid out in the below table:

| Time Period | Paid By | Monthly Wage | Hours per Week | Hourly Wage |
|---|---|---|---|---|
| 08/2016 – 09/2016 | Cash | $1,000 | 60 | $3.84 |
| 10/2016 – 01/2018 | Cash | $1,200 | 72 | $3.84 |

75.      At all times, Shou Ming Zheng was paid below the applicable minimum wage of $7.25 per hour under the FLSA and the applicable minimum wages of $9.00 per hour for work performed in 2016, $11.00 per hour for work performed in 2017, and $13.00 per hour for work performed in 2018 under NYLL.

76.      From approximately May 2017 through the end of his employment in January 2018, Shou Ming Zheng received one cash payment per pay period for his work at both the 46th Street Location and 55th Street Location.  Specifically, Shou Ming Zheng was given an envelope that contained $750 in cash twice per month.

77.      From approximately May 2017 through the end of his employment, Shou Ming Zheng was told by Yang Fang Ke, the head of delivery for both the 46th Street Location and 55th Street Location, that he needed to remit $150 in cash to the Defendants each pay period for allegedly tax-related reasons.  Specifically, every single time Shou Ming Zheng was paid his wages, Yang Fang Ke, the head of delivery, would hand Shou Ming Zheng $750 in cash contained in an envelope, and then take away $150 from the envelope right in front of Shou Ming Zheng, telling him that

they were giving this money "to the Boss," which Shou Ming Zheng understood to mean that the money was being given back to Sam Yan. As a result, Shou Ming Zheng only retained $600 in cash for each semi-monthly pay period, totaling to a salary of $1,200 per month by cash.

78.     Shou Ming Zheng never received any document explaining or demonstrating what had happened to the funds he remitted to Defendants each pay period as related to the federal and/or New York tax authorities.

*Xing Jiang*

79.     Throughout his employment with Defendants, Plaintiff Xing Jiang worked five days per week, twelve hours a day, for a total of approximately 60 hours per week. Throughout his employment, Shou Ming Zheng was paid as laid out in the below table:

| Time Period | Paid By | Monthly Wage | Hours per Week | Hourly Wage |
|---|---|---|---|---|
| 02/2019 – 03/2020 | Check | $1,700 | 60 | $6.52 |
| 03/2020 (2nd Half) | Cash | $1,400 | 60 | $5.37 |

80.     At all times, Shou Ming Zheng was paid below the applicable minimum wage of $7.25 per hour under the FLSA and the applicable minimum wages of $15.00 per hour for work performed in 2019 and 2020 under NYLL.

*       *       *

81.     In summary, throughout their employment by Defendants, Plaintiffs worked more than 60 hours a week for an hourly rate of between approximately $3.20 and $6.52 per hour. Consequently, Plaintiffs were consistently paid by Defendants substantially below the applicable New York State and federal minimum wage for their entire employment period.

Unreimbursed Expenses (Unlawful Deductions)

82.     Throughout the course of employment, Plaintiffs incurred significant expenses to purchase and maintain transportation equipment necessary to perform their deliveries.  These expenses included electric bikes and the associated maintenance costs.  Defendants never reimbursed Plaintiffs for these expenses, which further decreased their effective wages, in violation of NYLL and FLSA.

83.     As a condition of their employment by Defendants, Plaintiffs were required to purchase or furnish their own electric bikes in order to perform their work duties as delivery workers covering New York City.

84.     Plaintiffs were required to use their electric bikes to make all their deliveries which, in the aggregate, meant that Plaintiffs biked very long distances each day. Without their electric bikes, it would have been impossible for Plaintiffs to perform their delivery work.

85.     Each Plaintiff spent approximately $1,500 to purchase their electric bikes and other necessary bike equipment, such as spare batteries, bike chains, and locks.

86.     Plaintiffs also spent approximately $150 per month in maintenance fees for their bikes, such as fixing brakes or fixing problems with the battery or bike chains.

87.     Defendants never reimbursed Plaintiffs for their initial equipment costs or their continuing maintenance costs.  Plaintiffs did not know and were never notified that they were entitled to request from Defendants reimbursements for these purchases.

88.     In the course of their employment, Plaintiffs' bikes or batteries were also sometimes stolen.  Defendants did not reimburse or assist Plaintiffs in replacing stolen electric bikes or batteries.  When the equipment was stolen from a Dim Sum Palace restaurant, Defendants would sometimes offer Plaintiffs a subsidy of $200, leaving Plaintiffs to pay the rest of the substantial

cost of replacing their equipment.  However, when the equipment was stolen from the Defendants' premises under lock, Defendants would often refuse to give any money to assist with buying new equipment required to perform delivery work.

89.     The significant expenses incurred by Plaintiffs further decreased their effective wages such that their effective hourly rates were even further below the applicable minimum wages, in violation of FLSA and NYLL.

Notice Violations

90.     At the time of hiring, Defendants failed to provide Plaintiffs any written notice in English and Chinese containing the rate of pay and basis thereof, allowances claimed as part of the minimum wage, or the regular pay day, as required under NYLL § 195(1)(a).

91.     Because Plaintiffs did not receive accurate notices at the time of hire listing their rate of pay based on hours worked in the only language they were able to understand, Plaintiffs could not know they were legally entitled for higher wages and other rights. Thus, by failing to provide Plaintiffs notice, Defendants deprived Plaintiffs an opportunity to negotiate for more pay per hour or to elect to work elsewhere.

Paystub Violations

92.     NYLL requires employers to provide their employees with pay statements listing the rate of pay and basis thereof, the allowances claimed as part of the minimum wage, the regular hourly rate of pay, the overtime rate of pay, or the number of regular and overtime hours worked during the pay period.  NYLL § 195(3).

93.     For every given pay period, Defendants either failed to provide such pay statements or provided inaccurate information on them.

94.      Because at any given pay period, Plaintiffs either failed to receive any pay statements or received inaccurate pay statements, Plaintiffs did not have the opportunity to request more pay per hour, take appropriate action to obtain the payments due to them, or to elect to work elsewhere.

**Defendants Willfully Violated the FLSA**

95.      Various factors indicate that Defendants knew or, at the very least, showed reckless disregard as to whether their conduct was prohibited by the FLSA.

96.      First, based on their current and prior experience in the restaurant industry in New York City, Sam Yan and Kevin Yan knew or should have known the federal and state wage requirements, and should have taken steps to ensure compliance with the applicable requirements. As owners and operators of two restaurants in New York City during the relevant time period, Defendants were obligated to know and comply with the laws governing their business.  This is particularly true given the nature of their business, which relies heavily on the labor performed by employees working in the kitchen, waiting tables in their restaurants, and delivering meals to their customers.  Defendants should not have, and indeed, could not have ignored the very laws central to their core business.

97.      In addition, prior to working at the Dim Sum Palace restaurants, Sam Yan operated at least two other restaurants in New York City (*Red Egg* and *Shanghai Yeah*) and worked as a waiter at another restaurant in New York City (*Jean Georges*).  The fact that Sam Yan has been working in the hospitality business for a significant number of years, including as an employee himself, clearly shows that he could even less ignore his obligations under the minimum wage and overtime pay requirements.

98.      Further, because Sam Yan and Kevin Yan directly paid for and supervised Plaintiffs' working schedules, which were typically in twelve-hour shifts, Sam Yan and Kevin Yan knew the

number of hours worked by Plaintiffs and the actual wages they received.  Thus, they could not ignore that Plaintiffs' wages were well below the statutory minimum.

99.     Defendants also provided pay statements to Plaintiffs that were regularly fabricated with false or inaccurate information, such as amounts for tips that Plaintiffs never received. Whatever purpose Defendants were trying to achieve by doing so, this shows that Defendants intended to artificially inflate Plaintiffs' wages and thus were aware of certain legal requirements regarding wages.

100.    Likewise, the pay statements that were provided by Defendants did not set forth the hourly rate of pay for regular hours or overtime hours, nor the number of hours worked, which suggest that Defendants knew they were not in compliance with minimum wage and overtime requirements, and sought to avoid creating a paper trail documenting their legal obligations.

101.    Finally, Defendants placed a poster on a wall at the 46th Street Location, which, upon information and belief, contained information in English about the minimum wage and overtime requirements.  Defendants could not ignore what the minimum wage and overtime requirements were, which they themselves posted on the wall in a language Plaintiffs could not understand.

102.    All these factors show that Defendants knew that Plaintiffs were not compensated appropriately for the number of hours worked.  At the very least, they showed reckless disregard as to whether Plaintiffs were compensated as required under federal and state laws.  Consequently, Defendants willfully violated the FLSA.

**Complaints to the N.Y.S. Department of Labor and Tolling of the Statute of Limitations**

103.    NYLL §§ 198(3) and 663(3) provide a six-year statute of limitations for wage claims.

104.    The statute of limitations is tolled from the date an employee files a compliant with the New York State Department of Labor ("NYSDOL").

105.     Plaintiffs Neng Wu Chen, Qi Chun Chen, and Xing Jiang all started working for Defendants after March 2017.  Their claims under the NYLL are therefore within the six-year statute of limitations.

106.     On or about July 1, 2022, Plaintiff Shou Ming Zheng filed a complaint with the NYSDOL against Dim Sum Palace, Inc.  alleging minimum wage, overtime, and spread-of-hours violations under the NYLL.

107.     Shou Ming Zheng started working for the Defendants in approximately August 2016.

108.     Therefore, pursuant to NYLL §§ 198 (3) and 663(3), Shou Ming Zheng's complaint to the NYSDOL tolls the statute of limitations at least for his claims arising under the NYLL against Dim Sum Palace, Inc. for all the period of his employment by Defendants.

109.     On or about July 1, 2022, Plaintiff Mei Di Chen filed a complaint with the NYSDOL against Dim Sum Palace Yan, Inc. and Dim Sum Palace, Inc. alleging minimum wage, overtime, and spread-of-hours violations under the NYLL.

110.     Mei Di Chen started working for Defendants in approximately September 2016.

111.     Therefore, pursuant to NYLL §§ 198 (3) and 663(3), Mei Di Chen's complaint to the NYSDOL tolls the statute of limitations at least for his claims arising under the NYLL against at least Dim Sum Palace, Inc. for all the period of his employment by Defendants.

## **FIRST CAUSE OF ACTION**

### **Failure to Pay Minimum Wage Under the Fair Labor Standards Act**

112.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

113.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

114.      Defendants willfully failed to pay Plaintiffs the minimum wage required by the FLSA throughout Plaintiffs' employment, in violation of 29 U.S.C. § 206.

115.      Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages Under the Fair Labor Standards Act

116.      Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

117.      At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

118.      Defendants willfully failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay and the lawful minimum wage, in violation of 29 U.S.C. § 207.

119.      Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action.

## THIRD CAUSE OF ACTION

### Failure to Pay Minimum Wages Under New York Labor Law

120.      Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

121.      At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

122.      Throughout the Plaintiffs' employment, Defendants failed to pay Plaintiffs at least the applicable legal minimum hourly wage, in violation of NYLL § 652.

123.      Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

### FOURTH CAUSE OF ACTION

**Failure to Pay Overtime Wages Under New York Labor Law**

124.      Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

125.      At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

126.      Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay, or one-and-a-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of NYLL and accompanying regulations.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2.

127.      Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## FIFTH CAUSE OF ACTION

### Failure to Pay Spread-of-Hours Wages Under New York Labor Law

128.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

129.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

130.     Throughout Plaintiffs' employment, Defendants failed to pay Plaintiffs an additional hour of pay at the minimum wage for each day in which Plaintiffs worked a spread of hours in excess of 10 hours per day, in violation of NYLL and accompanying regulations.  N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.4; 142-2.17.

131.     Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid spread-of-hours wages, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## SIXTH CAUSE OF ACTION

### Unlawful Deductions Under New York Labor Law

132.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

133.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2 and 651.

134.     Throughout Plaintiffs' employment, Defendants required Plaintiffs to purchase and maintain equipment necessary to perform their work, including but not limited to electric bikes. Defendants did not reimburse Plaintiffs for these expenses, in violation of N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.7.

135.     Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unreimbursed expenses, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

<u>SEVENTH CAUSE OF ACTION</u>

**Failure to Pay Wages on a Weekly Basis Under New York Labor Law**

136.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

137.     Because of their work as delivery workers, Plaintiffs were "manual workers" as defined by NYLL § 190(4).

138.     Throughout Plaintiffs' employment, Defendants paid them twice per month in violation of the requirement to pay manual workers on a weekly basis pursuant to NYLL § 191.

139.     Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

<u>EIGHTH CAUSE OF ACTION</u>

**Failure to Provide Notice at the Time of Hire Under New York Labor Law**

140.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

141.     Defendants failed to provide Plaintiffs written notices at the time of hire in English and in the Plaintiffs' primary language with information such as rate of pay and the regular payday, among other information.

142.     Defendants' acts violated NYLL § 195(1)(a).

143.     Under NYLL § 198(1-b), Plaintiffs are each entitled to recover from Defendants the statutory maximum of five thousand dollars for Defendants' violations of NYLL § 195(1)(a), interest, reasonable attorneys' fees, and costs of the action.

## NINTH CAUSE OF ACTION

### Failure to Provide Pay Statements Under New York Labor Law

144.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

145.     Throughout Plaintiffs' employment, Defendants failed to provide Plaintiffs with a written statement at the time wages were paid containing all of the information required by NYLL § 195(3), including but not limited to rate(s) of pay and basis thereof; regular hourly rate of pay; overtime rate of pay; number of regular hours worked; and number of overtime hours worked.

146.     Defendants' acts violated NYLL § 195(3) throughout Plaintiffs' employment.

147.     Under NYLL § 198(1-d), Plaintiffs are each entitled to recover from Defendants the statutory maximum of five thousand dollars for Defendants' violations of NYLL § 195(3), interest, reasonable attorneys' fees, and costs of the action.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully requests that judgment be granted:

1.     Declaring that Defendants' conduct complained of herein is in violation of the federal and New York State labor laws;

2.     Awarding Plaintiffs unpaid minimum wages, overtime wages, and spread-of-hours wages;

3.     Awarding Plaintiffs damages for unreimbursed expenses;

4.     Awarding Plaintiffs liquidated damages;

5.      Awarding Plaintiffs damages due to violations of New York Labor Law § 195 for failure to provide required notices and pay statements;

6.      Awarding Plaintiffs damages due to violations of New York Labor Law § 191 for failure to pay Plaintiffs on a weekly basis;

7.      Awarding Plaintiffs attorneys' fees and costs;

8.      Awarding Plaintiffs pre- and post-judgment interest;

9.      Awarding Plaintiffs any such further relief as may be just and proper.

Dated: February 28, 2023

Respectfully submitted,

By: */s/ Alan E. Schoenfeld*

Stephanie Avakian
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvannia Avenue, NW
Washington, DC 20037
(202) 663-6000
Stephanie.Avakian@wilmerhale.com

Alan E. Schoenfeld
Sandra Redivo (*pro hac vice forthcoming*)
Tony J. Lee (*pro hac vice forthcoming*)
Tae Kim (*pro hac vice forthcoming*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Alan.Schoenfeld@wilmerhale.com
Sandra.Redivo@wilmerhale.com
Tony.Lee@wilmerhale.com
Tae.Kim@wilmerhale.com

David A. Colodny
Anthony Damelio
CATHOLIC MIGRATION SERVICES
47-01 Queens Blvd., Suite 203
Sunnyside, NY  11104
(347) 472-3500
dcolodny@catholicmigration.org
adamelio@catholicmigration.org

*Attorneys for Plaintiffs*
